J-S27019-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
  :
          v.   :
  :
  :
  :
ANDREW MARTIN   :
  :
        Appellant   :   No. 1378 EDA 2017

Appeal from the Judgment of Sentence November 30, 2016
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0005709-2015

BEFORE: SHOGAN, J., LAZARUS, J., and DUBOW, J.

MEMORANDUM BY LAZARUS, J.:              **FILED JUNE 04, 2018**

Andrew Martin appeals from the judgment of sentence, entered in the Court of Common Pleas of Philadelphia County, after he entered an open guilty plea to numerous charges related to a home invasion robbery.[1] On appeal, Martin challenges, *inter alia*, the voluntariness of his plea.[2] The Commonwealth does not oppose the grant of relief on this claim. Upon review

---

[1] Martin pled guilty to two counts each of robbery, aggravated assault, conspiracy to commit robbery, unlawful restraint, theft by unlawful taking, theft by receiving stolen property, criminal coercion, and false imprisonment; three counts each of simple assault, terroristic threats, recklessly endangering another person, and possessing an instrument of crime; and single counts of aggravated indecent assault, indecent assault, burglary, conspiracy to commit aggravated assault, possessing a firearm by person prohibited, carrying a firearm without a license, carrying a firearm in Philadelphia, criminal trespass, and loitering.

[2] Because we conclude that Martin's plea was not voluntarily entered, we need not address the remainder of his appellate claims.

of the record, we vacate Martin's judgment of sentence and remand to the trial court for further proceedings.

On September 2, 2016, Martin pled guilty to acting with a codefendant to forcibly enter a residence at 6109 Shisler Street in Philadelphia using a crowbar. Martin and his accomplice woke the male resident and his five-year-old son, pointed guns at them, and demanded money, saying "Don't move or I'll kill you." They took phones and jewelry. Martin's codefendant went upstairs to a bedroom where an adult female resident was sleeping. After ordering her downstairs at gunpoint, Martin's codefendant took her back upstairs and digitally penetrated her vagina. Two children in the home called the police. When police arrived, they stopped Martin at the front door of the residence. Martin's codefendant fled out of a second floor window and was not apprehended until police ran blood found at the scene through CODIS[3] and determined his identity.

On February 29, 2016, Martin appeared before the Honorable Rayford Means to enter a guilty plea to the above charges. However, due to the complicated nature of the case, Judge Means determined he did not have time to complete the hearing that day and continued the proceedings. Martin appeared again before Judge Means on September 2, 2016, and entered his

_____

[3] CODIS is the acronym for the Combined DNA Index System and is the generic term used to describe the FBI's program of support for criminal justice DNA databases as well as the software used to run these databases. https://www.fbi.gov/services/laboratory/biometric-analysis/codis/codis-and-ndis-fact-sheet (visited 5/7/18).

plea. Sentencing took place on November 30, 2016, at which time Martin received an aggregate term of 112½ to 225 years' incarceration.

Martin filed a post-sentence motion to withdraw his plea and to reconsider his sentence, which Judge Means denied after a hearing. Martin filed a timely appeal to this Court, followed by a court-ordered Pa.R.A.P. 1925(b) statement of errors complained of on appeal.

Martin claims that the trial court erred in denying his motion to withdraw his plea. He asserts that his attorney only met with him once prior to the entry of his plea; counsel did not review discovery materials himself, or with Martin; and the guilty plea colloquy was legally defective because it did not contain the essential elements required under Pa.R.Crim.P. 590.[4]

When reviewing a claim related to the post-sentence withdrawal of a guilty plea, it is well-established that a showing of prejudice on the order of manifest injustice is required before withdrawal is properly justified. **Commonwealth v. Gonzalez**, 840 A.2d 326, 329 (Pa. Super. 2003). "To establish such manifest injustice, [appellant] must show that his plea was involuntary or was given without knowledge of the charge." **Commonwealth v. Rachak**, 62 A.3d 389, 394 (Pa. Super. 2012).

A voluntary and understanding plea requires that the defendant understand, at a minimum, the following factors: (1) the nature of the

---

[4] The Commonwealth agrees that the plea colloquy was defective.

charges; (2) the factual basis for the plea; (3) the right to be tried by a jury; (4) the presumption of innocence; (5) the permissible range of sentences; and (6) the fact that the judge is not bound by the terms of any plea agreement. *Commonwealth v. Bedell*, 954 A.2d 1209, 1212 (Pa. Super. 2008). *See also* Pa.R.Crim.P. 590, comment. The failure to address any of the factors will require that the defendant be permitted to withdraw his or her guilty plea. *Commonwealth v. Harris*, 589 A.2d 264, 266 (Pa. Super. 1991), *citing Commonwealth v. Glaze*, 531 A.2d 796 (Pa. Super. 1987). If a written colloquy is used it must be completed and signed by the defendant, and made part of the record. *Harris*, 589 A.2d at 265.

> In order for a guilty plea to be constitutionally valid, the guilty plea colloquy must affirmatively show that the defendant understood what the plea connoted and its consequences. This determination is to be made by examining the totality of the circumstances surrounding the entry of the plea. Thus, even though there is an omission or defect in the guilty plea colloquy, a plea of guilty will not be deemed invalid if the circumstances surrounding the entry of the plea disclose that the defendant had a full understanding of the nature and consequences of his plea and that he knowingly and voluntarily decided to enter the plea.

*Commonwealth v. Yeomans*, 24 A.3d 1044, 1047 (Pa. Super. 2011).

In this case, Judge Means' oral colloquy of Martin was woefully lacking.[5] The following reflects the entirety of the colloquy:

---

[5] We note that the transcripts in this matter are replete with statements made by Judge Means admonishing counsel "let's go," "let's move," and "next point." The court also consistently interrupted defense counsel during his examination of defense witnesses at the hearing on Martin's motion to withdraw. As a

- 4 -

THE COURT:  How old are you?

THE DEFENDANT:  Twenty-seven.

THE COURT:  How far did you go in school?

THE DEFENDANT:  I got my GED upstate.

THE COURT:  Read, write, understand English?

THE DEFENDANT:  Yes.

THE COURT:  Are you under the influence of any drugs or alcohol today?

THE DEFENDANT:  No.

THE COURT:  Suffering from any mental illness today?

THE DEFENDANT:  No.

THE COURT:  Satisfied with your attorney today?

THE DEFENDANT:  Yes.

THE COURT:  You understand you could have a jury trial in this matter?  If you wanted a jury trial, we'd bring in 40 citizens, you and your attorney would choose 12 to hear your case.  You understand that?

THE DEFENDANT:  Yes.

THE COURT: All 12 would deliberate.  All 12 would have to agree that you're either guilty or not guilty.  If they could not agree, that'd be known as a hung jury.  You'd have a right to a new trial

result, counsel was forced to repeatedly ask the court for time to speak, requesting "Judge, could I . . . make my record?" and "Judge, may I just finish with Mr. Montoya?" and assuring the court that "I'm . . . going as quickly as I can."  N.T. Post-Sentence Motions Hearing, 3/17/17, at 8, 21, and 25.  While there is something to be said for an efficiently run courtroom, we feel compelled to remind Judge Means that a court's ultimate goal in presiding over a proceeding must be fairness, due process and justice, not speed, volume and the quick turnover of cases.  Ironically, here, the court's eagerness to rush through Martin's plea hearing has resulted in a reversal of the judgment of sentence and the unnecessary expenditure of additional judicial resources.

or the Commonwealth could let you go free. Do you understand that?

THE DEFENDANT: Yes.

THE COURT. Has anyone threatened you, forced you, promised you anything to make you give up your right to a jury trial?

THE DEFENDANT: No.

THE COURT: Are you presently on probation or parole?

THE DEFENDANT: Yes.

THE COURT: Do you understand this would be a direct violation?

THE DEFENDANT: Yes.

[DISTRICT ATTORNEY]: Do you (unintelligible) the facts?

THE COURT: Okay. All right. Let's go. Facts.

N.T. Guilty Plea, 9/2/16, at 4-6. At this point, the district attorney proceeded to set forth a brief recitation of the facts of the case, after which the court immediately accepted Martin's guilty plea. The court then set a date for sentencing, ordered presentence, mental health and FIR[6] evaluations, revoked Martin's bail and adjourned.[7]

During his colloquy, Judge Means did not advise Martin regarding the presumption of innocence, the nature of the charges, the permissible range of sentences, or the fact that the judge is not bound by the terms of any plea

---

[6] The Forensic Intensive Recovery (FIR) Program is a prison-deferral initiative that offers eligible criminal offenders substance abuse treatment in lieu of incarceration. *See* http://www.phmc.org/site/programs/behavioral-health-services/criminal-justice-services (visited 5/7/18).

[7] The transcript of the guilty plea hearing is comprised of a mere seven pages.

agreement. **Bedell**, **supra**. Moreover, although a written colloquy was prepared in this matter, it was not signed by Martin, nor did he initial any of its pages, as is common practice, to demonstrate that he had read the document. **See Harris**, **supra** (written colloquy must be completed and signed by defendant).

Additionally, Martin's plea counsel,[8] Chris Montoya, Esquire, testified that, prior to appearing with Martin before Judge Means to enter Martin's plea, he did not have any of the discovery on the case and did not recall discussing the facts of the case with Martin. N.T. Post-Sentence Motions Hearing, 3/17/17, at 24. Attorney Montoya further testified that he did not complete a written colloquy with his client, because he presumed that Martin's prior counsel had done so at the earlier aborted plea hearing. **Id.** at 25.

Based on the totality of the foregoing circumstances, it is apparent that Martin's plea was not entered in a knowing, understanding and voluntary manner. The procedural deficiencies in his plea hearing and absence of a signed written colloquy, combined with the lack of information possessed by his last-minute plea counsel, all combine to establish the manifest injustice necessary to entitle a defendant to post-sentence withdrawal of his plea.

---

[8] Attorney Montoya was appointed to represent Martin after Martin's original counsel, who appeared at the initial, aborted sentencing hearing on February 9, 2016, was compelled to withdraw his representation due to a conflict. Although the record does not contain any documentation of Montoya's entry of appearance, it appears he was appointed on the day of Martin's second guilty plea hearing.

***Harris***, ***supra*** (failure to address *any* Pa.R.Crim.P. 590 factor(s) requires that defendant be permitted to withdraw guilty plea); ***Rachak***, ***supra***. Accordingly, we vacate Martin's judgment of sentence and remand for further proceedings.

Judgment of sentence vacated; case remanded; jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/4/18